# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN FUENTES,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION HOLDING CORPORATION REPRESENTATIVES, et al.,<br><br>    Defendants. | Case No. 1:17-cv-00745-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED AGAINST DEFENDANT G. RODRIGUEZ ON PLAINTIFF'S CLAIMS FOR EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT, FOR AN UNREASONABLE SEARCH IN VIOLATION OF THE FOURTH AMENDMENT, FOR RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, FOR ASSAULT, AND FOR BATTERY, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Jonathan Fuentes ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on May 30, 2017. (ECF No. 1). The Court issued an order finding certain claims cognizable, and gave Plaintiff an option to file an amended complaint, proceed on the cognizable claims, or stand on his complaint subject to the Court issuing findings and

1

recommendations to a district judge consistent with the screening order. (ECF No. 8).

Plaintiff filed a First Amended Complaint on February 26, 2018. (ECF No. 9). The allegations in the First Amended Complaint relate to a digital search for contraband at Wasco State Prison Reception Center, and Defendants' actions before and after that search.

The Court has reviewed Plaintiff's First Amended Complaint and recommends allowing certain of Plaintiff's claims against Defendant G. Rodriguez to proceed past the screening stage. The Court recommends dismissing all other claims and defendants with prejudice. Plaintiff has twenty-one days to file objections to these findings and recommendations to the assigned district judge.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts

2

"are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges that, on October 24, 2016, he was assigned cell number 250, which was confined general population at Wasco State Prison-Reception Center. His cellmate was Duran, CDCR No. F-58443. That day, several correctional officers and a sergeant came to the building to conduct cell searches. At about 9:20 am, Defendant G. Rodriguez came to Plaintiff's cell door and directed him and his cell mate to unclothe down to boxers and shower shoes, and then instructed them to "turn around and cuff up."

On the way down the stairs, Defendant G. Rodriguez pushed plaintiff against the wall next to the c/o office. Defendant G. Rodriguez used vulgarity and lifted Plaintiff's cuffed arms behind him, causing pain to Plaintiff's right shoulder and wrist. Plaintiff alleges this was unprovoked and was malicious and sadistic.

Defendant G. Rodriguez then conducted a body cavity search in front of numerous inmates and correctional officers. Plaintiff alleges this was unreasonable because he was handcuffed and could not get rid of any evidence. Defendant G. Rodriguez reached inside Plaintiff's buttocks, digitally. When Plaintiff asked what he was doing, Defendant G. Rodriguez said "shut up turn around, and shut up."

Defendant M. Venegas had an opportunity to intervene and prevent this intrusive cavity search but failed to do so.

Defendant G. Rodriguez found alleged contraband hidden in Plaintiff's buttocks and turned it over to Defendant M. Venegas. Plaintiff continued to verbally complain about the search.

Plaintiff was then escorted to the program office cell cage. Plaintiff complained to the

3

officers' supervisors, E. Venegas and E. Rivera. Plaintiff was interviewed by 2 unknown officers of the Investigative Services Unit. Plaintiff was advised if he proceeded, he would be placed in Administrative Segregation.

Plaintiff told Defendant E. Venegas that he suffered from chronic pain to his right shoulder, wrist, and rectum. Defendant E. Venegas ignored these complaints.

Since the event, Plaintiff suffers from pain in his right shoulder, right arm, and rectum.

The next day, October 25, 2016, Plaintiff was transferred to Calipatria State Prison. All of his reading materials, materials and supplies necessary for access to courts, and personal hygiene articles were destroyed. Defendant G. Rodriguez was the last person to search and seize Plaintiff's property. Plaintiff appears to allege that Defendant G. Rodriguez destroyed Plaintiff's property in retaliation for bringing a complaint to a supervisor.

Defendant J. Cronjager failed to take disciplinary or other action against Defendants G. Rodriguez and M. Venegas. Defendants J. Cronjager, E. Rivera, and E. Venegas failed to establish adequate procedures for providing medical care to Plaintiff, including inadequate training, supervision or control of subordinates.

Plaintiff also claims that the debilitating conditions of the Reception Center constitute cruel and unusual punishment. They also strip inmates of their dignity.

### III. DISCUSSION

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see

also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

**B. Excessive Force**

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not… use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry

5

is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

The Court finds that, liberally construed, Plaintiff has stated a cognizable claim for relief against Defendant G. Rodriguez for excessive force in violation of the Eighth Amendment. Plaintiff alleges that Defendant G. Rodriguez pushed Plaintiff against a wall, used vulgarity, and lifted Plaintiff's cuffed arums up behind him, causing extreme unnecessary and wanton infliction of pain to Plaintiff's right shoulder and wrist.

The Court recommends allowing the state law claims of assault and battery to proceed for the same reason. "Assault and battery are defined in the California Penal Code. Assault is the 'unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' Cal.Penal Code § 240. 'A battery is any willful and unlawful use of force or violence upon the person of another.' Cal.Penal Code § 242. 'Harmful or offensive contact, intentionally done, is the essence of battery, while apprehension of that contact is the basis of assault.' 5 B.E. Witkin, Summary of Cal. Law, Torts § 383 (10th ed.2005) (citations omitted)." Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007).

Under California civil law, the elements of assault are: "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." Brooks v. United States, 29 F.Supp.2d 613, 617 (N.D.Cal.1998) (citing Restatement (Second) of Torts § 21). "Physical

injury is not a required element of either assault or battery. The tort of assault is complete when the anticipation of harm occurs." Kiseskey v. Carpenters' Tr. for So. California, 144 Cal. App. 3d 222, 232 (Cal. Ct. App. 1983).

Under California civil law, the elements of a battery are: "(1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." Tekle, 511 F.3d at 855. Accord Piedra v. Dugan, 123 Cal. App. 4th 1483, 1495 (Cal. Ct. App. 2004).

Plaintiff's allegations are enough to state a claim for assault and battery, and the Court recommends exercising supplemental jurisdiction over this related claim.

However, Plaintiff's allegations do not establish a claim for sexual assault (or sexual battery). "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood v. Beauclair, 692 F. 1041, 1046 (9th Cir. 2012). "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Crawford v. Cuomo, 796 F.3d 252, 257 (2nd Cir. 2015). "[S]exual contact between a prisoner and a prison guard serves no legitimate role and 'is simply not part of the penalty that criminal offenders pay for their offenses against society.'" Wood, 692 F.3d at 1050 (quoting Farmer, 511 U.S. at 834) (some internal quotation marks omitted). "Where there is no legitimate penological purpose for a prison official's conduct, courts have 'presum[ed] malicious and sadistic intent.'" Id. (alteration in original) (quoting Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1290 (10th Cir. 1999)). See also M.N. v. Morgan Hill Unified School District, 20 Cal.App.5th 607 (2018) ("Misdemeanor sexual battery is defined as follows: (1) Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery").

Because Plaintiff does not allege facts showing that Defendant G. Rodriguez acted for

sexual arousal or sexual gratification, and because there appears to have been a legitimate penological purpose for the touching, the Court finds that Plaintiff's allegations do not establish a claim for sexual assault (or sexual battery).

### C. Unreasonable Search and Seizure

The Fourth Amendment guarantees "[t]he right of the people to be secure ... against unreasonable searches and seizures." This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context. In Bell v. Wolfish, 441 U.S. 520, 558 (1979), the Supreme Court set forth a balancing test for determining a search's reasonableness:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it *requires* a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the *scope* of the particular intrusion, the *manner* in which it is conducted, the *justification* for initiating it, and the *place* in which it is conducted.

Id. at 559 (emphasis added). The Ninth Circuit has also explained that "not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

Moreover, the Ninth Circuit has stated that "digital rectal searches are one of the most intrusive methods of detecting contraband." Tribble v. Gardner, 860 F.2d 321, 325–326 (9th Cir. 1988). They may nevertheless be reasonable if done for the legitimate purpose of preventing the introduction of contraband. The Ninth Circuit has explained that "the Fourth Amendment requires that rectal searches in prisons be conducted with reasonable cause and in a reasonable manner. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). A violation of the Fourth Amendment may be predicated on a finding either that cause was lacking or that the search was conducted in an unreasonable manner." Vaughan v. Ricketts 950 F.2d 1464, 1468–69 (9th Cir. 1991). See also Cramer v. Dickinson, 2008 WL 1925001, at *3–4 (E.D.C.A. Apr. 29, 2008) ("While plaintiff indicates that C.O. Dickinson strip searched her and that Nurse Johnson performed a digital rectal search, plaintiff fails to state the manner

8

in which either search was conducted, the justification for initiating either search, and the place(s) where the searches were conducted. Based on plaintiff's *allegations*, a strip search and a digital rectal search of a prisoner believed to possess contraband is not unreasonable and does not rise to the level of a constitutional violation.").

Here, Plaintiff alleges that the search was conducted "in front of numerous inmates and other correctional officers," and that "Plaintiff was already handcuffed, being escorted, hence, there was no chance to get rid of any evidence." Although Plaintiff does not describe why Defendant G. Rodriguez did the search, he alleges that Defendant G. Rodriguez did find something in Plaintiff's buttocks, which Plaintiff describes as "alleged contraband." This search also occurred, allegedly, after Defendant G. Rodriguez pushed Plaintiff against a wall, used vulgarity, and lifted Plaintiff's arms behind him, as discussed above.

Ultimately the Court recommends allowing a claim to proceed against Defendant G. Rodriguez for a violation of the Fourth Amendment for an unreasonable search. The law allows prison officers to perform digital searches for cause in a reasonable manner. Although the cause is not described here, Plaintiff concedes that the search revealed something that was "allegedly" contraband. It is very likely therefore that there was sufficient cause. However, Plaintiff states a claim that the search was done in an unreasonable manner in front of inmates, without justification. The Court is not determining that the facts as Plaintiff described would constitute an unconstitutional search—rather, at this stage of the proceedings, and given the fact-intensive inquiry needed to assess the reasonableness of this search, the Court recommends finding that Plaintiff may proceed on his Fourth Amendment claim.

### D. Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v.

Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff claims that Defendant M. Venegas failed to intervene to stop the body cavity search. This does not describe a constitutional claim. A defendant is not liable for failing to prevent an unconstitutional search by another person. Rather, the law regarding failure to protect involves knowing that an inmate's safety is in danger with the ability to stop that physical danger. Plaintiff does not allege that Defendant V. Venegas failed to protect him with regards to G. Rodriguez allegedly unprovoked attack prior to the search. Defendant V. Venegas is not liable for failure to stop a search, which Plaintiff alleges to be unreasonable. That search may have violated Plaintiff's Fourth Amendment rights, but it is not the sort of safety risk addressed in an Eighth Amendment failure to protect claim.

### E. Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of

and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Plaintiff alleges that he notified defendant E. Venegas numerous times of the chronic pain to his right shoulder, wrist, and rectum but his complaints were ignored. He also claims that Defendants J. Cronjager, E. Rivera and E. Venegas failed to establish adequate procedures for providing medical care, including treatment, supervision or control of subordinates.

The Court finds that Plaintiff's allegations are insufficient to state a claim for deliberate indifference to serious medical needs. His allegations are very brief and amount to saying that he told a correctional officer he was hurt after a search, but was ignored. Defendant M. Venegas is a correctional sergeant. He is not a medical professional and there are no allegations that he was the person who should have provided medical care. Plaintiff does not allege he submitted any formal requests for medical care. He merely alleges that he complained to Defendant Venegas. Moreover, it is unclear what medical care he needed at that moment and how a failure to get that medical care caused him injury. Merely being in pain is insufficient to establish this element. The allegations against Defendant Venegas also do not establish deliberate indifference under the law. It appears that Defendant Venegas ignored Plaintiff's complaints of pain, but that allegation is not sufficient to show that Defendant Venegas subjectively knew that Plaintiff had a serious need for medical care that Defendant Venegas could have addressed, but did not.

### F. Retaliation

There are five basic elements to a First Amendment retaliation claim: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005). "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985)." Barnett v. Centoni, 31 F.3d 813, 815–16 (9th Cir. 1994).

Plaintiff appears to allege that Defendant G. Rodriguez seized his property including "all reading material, material and supplies necessary for access to courts, and personal hygiene articles," the day after the events described above and after Plaintiff complained about G. Rodriguez to his supervisors. There are no allegations about anything Defendant G. Rodriguez said to link the taking to Plaintiff's complaints.

The Court recommends allowing a claim for retaliation in violation of the First Amendment to proceed against Defendant G. Rodriguez. The Court acknowledges that the allegations are very brief and largely conclusory. That said, the allegation that Defendant G. Rodriguez took an adverse action the day after the altercation and complaint, combined with the fact that there does not appear to be a legitimate penological interest in taking Plaintiff's property, especially his material needed for access to the courts, is sufficient for the claim to proceed at this early stage.

### G. Conditions of Confinement

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."

Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the Court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Hoptowit, 682 F.2d at 1246-47; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the Court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005); Hoptowit, 682 F.2d at 1258. As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to establish an Eighth Amendment violation. See Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

Plaintiff alleges that "cumulative effect of deprivation of good medical care, and other crushing conditions of incarceration at Wasco State Prison-Reception Center, constitute a serious deprivation of at least one basic human need, including but not limited to mental and physical health." He includes other similar conclusory allegations about the lack of human dignity and overall poor conditions at the facility.

These allegations are insufficient to state a claim under the legal standards above.

Plaintiff does not include any details about how he is deprived of basic human needs. The allegations are conclusory, without supporting facts. Moreover, Plaintiff has not made any allegations that a specific person acted with deliberate indifference in subjecting him to unconstitutional conditions of confinement.

### A. Supervisory Liability

The allegations against Defendants Cronjager, Rivera, and Venegas for failure to train and failure establish adequate procedures, and against Defendant Cronjager for failure to take disciplinary actions against Defendants G. Rodriguez and Venegas, are insufficient to establish a claim against Defendants Cronjager, Rivera, and Venegas. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

Plaintiff does not make any specific allegations about the policies or training at the institution, how they were insufficient, and how those policies ultimately caused a violation of his constitutional rights. Other than Plaintiff's conclusory allegations, there does not appear to

be any connection between these defendants and the alleged excessive force, strip search, and denial of medical care.

The Court does not find a claim for negligence against these defendants for the same reason.

### IV. CONCLUSION AND ORDER

The Court has screened Plaintiff's First Amended Complaint and finds that it states cognizable claims Defendant G. Rodriguez, Correctional Officer of Wasco State Prison Reception Center as of October 2016, for excessive force in violation of the Eighth Amendment, for an unreasonable search in violation of the Fourth Amendment, for retaliation in violation of the First Amendment, for assault, and for battery. However, the Court finds that the First Amended Complaint states no other cognizable claims.

The Court will not recommend granting further leave to amend. This is Plaintiff's First Amended Complaint, and the Court has already provided ample legal guidance when it reviewed Plaintiff's original complaint.

Therefore, based on the foregoing, IT IS HEREBY RECOMMENDED that this case proceed against Defendant G. Rodriguez on Plaintiff's claims for excessive force in violation of the Eighth Amendment, for an unreasonable search in violation of the Fourth Amendment, for retaliation in violation of the First Amendment, for assault, and for battery, and that all other claims and defendants be dismissed with prejudice.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///
///
///

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **March 28, 2018**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE