# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN FUENTES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>G. RODRIGUEZ,<br><br>　　　　Defendant. | Case No. 1:17-cv-00745-LJO-EPG-PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING THAT DEFENDANT RODRIGUEZ'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF No. 28)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY DAYS |

Plaintiff Jonathan Fuentes is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Defendant Rodriguez has moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing this action. For the reasons stated herein, the undersigned recommends granting Defendant Rodriguez's motion for summary judgment.

**I.　BACKGROUND**

This action is proceeding on Plaintiff's First Amended Complaint ("FAC"), (ECF No. 9), "against Defendant G. Rodriguez on Plaintiff's claims for excessive force in violation of the Eighth Amendment, for an unreasonable search in violation of the Fourth Amendment, for retaliation in violation of the First Amendment, for assault, and for battery." (ECF No. 13 at 2).[1]

---
[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

1 | These claims stem from Plaintiff's allegation that Defendant Rodriguez pushed Plaintiff against the wall, painfully lifted Plaintiff's cuffed arms behind him, conducted a body cavity search in front of numerous inmates and staff, and destroyed Plaintiff's property in retaliation for reporting the misconduct.

On November 16, 2018, Defendant Rodriguez filed a motion summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies before filing this action. (ECF No. 28). Plaintiff filed an opposition, and Defendant Rodriguez filed a reply. (ECF Nos. 29, 33). On May 17, 2019, the Court held a hearing on the motion. (ECF No. 35).

## II. LEGAL STANDARDS

### A. Exhaustion

"The California prison grievance system has three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011), and Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)). See also Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies . . . .").

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action

2

whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Reyes, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in Ross, 136 S. Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859–60.

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

///

3

**B. Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded fact-finder could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981)).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence

at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n.2 (quoting In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 258 (3d Cir. 1983)).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

### III. FACTUAL ALLEGATIONS OF FIRST AMENDED COMPLAINT

Plaintiff alleges that, on October 24, 2016, he was assigned cell number 250, which was confined general population at Wasco State Prison-Reception Center. That day, several correctional officers and a sergeant came to the building to conduct cell searches. At about 9:20 a.m., Defendant G. Rodriguez came to Plaintiff's cell door and directed him and his cellmate to unclothe down to boxers and shower shoes, and then instructed them to "turn around and cuff up."

On the way down the stairs, Defendant G. Rodriguez pushed Plaintiff against the wall next to the correctional officers' office. Defendant G. Rodriguez used vulgarity and lifted Plaintiff's cuffed arms behind him, causing pain to Plaintiff's right shoulder and wrist. Plaintiff alleges this was unprovoked and was malicious and sadistic.

Defendant G. Rodriguez then conducted a body cavity search in front of numerous inmates and correctional officers. Plaintiff alleges this was unreasonable because he was handcuffed and could not get rid of any evidence. Defendant G. Rodriguez reached inside

1 Plaintiff's buttocks, digitally. When Plaintiff asked what he was doing, Defendant G. Rodriguez
2 said "shut up turn around, and shut up."
3     Defendant G. Rodriguez found alleged contraband hidden in Plaintiff's buttocks and
4 turned it over to Defendant M. Venegas. Plaintiff continued to verbally complain about the
5 search. Plaintiff was then escorted to the program office cell cage. Plaintiff complained to the
6 officers' supervisors, E. Venegas and E. Rivera. Plaintiff was interviewed by 2 unknown officers
7 of the Investigative Services Unit. Plaintiff was advised if he proceeded, he would be placed in
8 Administrative Segregation.
9     Since the event, Plaintiff suffers from pain in his right shoulder, right arm, and rectum.
10     The next day, October 25, 2016, Plaintiff was transferred to Calipatria State Prison
11 ("CSP"). All of his reading materials, materials and supplies necessary for access to courts, and
12 personal hygiene articles were destroyed. Defendant G. Rodriguez was the last person to search
13 and seize Plaintiff's property. Plaintiff appears to allege that Defendant G. Rodriguez destroyed
14 Plaintiff's property in retaliation for bringing a complaint to a supervisor.

### IV. DISCUSSION

#### A. Summary of Evidence Submitted by Parties

17     In the motion for summary judgment, Defendant Rodriguez argues that Plaintiff failed to
18 properly exhaust his administrative remedies through the third level of review before filing suit.
19 (ECF No. 28-1 at 1). Specifically, Defendant Rodriguez contends that "Plaintiff's inmate appeal
20 was properly cancelled as untimely, that Plaintiff failed to separately appeal the cancellation
21 decision, and that Plaintiff failed to exhaust the appeal through all three levels of review." (ECF
22 No. 33 at 2). In the opposition, Plaintiff argues that Defendants interfered with Plaintiff's
23 opportunity to exhaust administrative remedies by failing to notify Plaintiff that his appeal was
24 accepted at some point to proceed to the third level of review. (ECF No. 29 at 5).
25     Defendant Rodriguez has submitted the declaration of F. Feliciano, an employee of the
26 California Department of Corrections and Rehabilitation ("CDCR") who is a Correctional
27 Counselor and serves as an Appeals Coordinator for CDCR's inmate grievance process at Wasco
28 State Prison ("WSP"). (ECF No. 28-4 at 1–2). F. Feliciano declares that the administrative

grievance process for inmates in WSP custody has three levels of review. The first two levels of review are handled at WSP, and the third level of review is handled by CDCR's Office of Appeals in Sacramento. (ECF No. 28-4 at 2).

F. Feliciano declares that a search of the Inmate/Parolee Appeals Tracking System ("IATS") was conducted for appeals submitted by Plaintiff. The search revealed three appeals filed by Plaintiff at WSP between October 24, 2016 (the date of the incident) and May 30, 2017 (the date Plaintiff initiated this civil action)—Appeal No. WSP-O-17-00752 (the "Staff Complaint Appeal"), Appeal No. CAL-O-1700436/WSP-O-17-01186/IAB-1706387 (the "RVR Appeal"), and Appeal No. CAL-O-17-00595/WSP-O-17-01606 (the "Property Appeal").[2] (ECF No. 28-4 at 2).

It is undisputed that Plaintiff did not exhaust the RVR Appeal and the Property Appeal through the third level of review. (ECF No. 28-2 at 9, 12; ECF No. 28-5 at 2–4; ECF No. 31 at 7, 10). Based on his submissions, Plaintiff appears to acknowledge the only inmate appeal that could have potentially exhausted the claims set forth in the First Amended Complaint is Appeal No. WSP-O-17-00752, the Staff Complaint Appeal. (ECF Nos. 29–32).

The parties have submitted copies of Appeal No. WSP-O-17-00752,[3] which was submitted on or about February 10, 2017 and received by WSP's Appeals Office on or about February 23, 2017. (ECF No. 28-4 at 3, 13; ECF No. 30 at 8). In this appeal, Plaintiff raised allegations regarding excessive force and an unreasonable search but did not mention retaliation or destruction of property. Plaintiff also explained in the appeal that no time restraints had been violated because he was waiting to attach a final disposition of the rules violation report ("RVR"). The appeal was categorized as a staff complaint and automatically bypassed the first level of review per CDCR regulations. (Id.).

---

[2] Inmate appeals or grievances are made on a CDCR form 602 and are also referred to as "602s."

[3] There are two different copies of Appeal No. WSP-O-17-00752 submitted by the parties—Exhibit B to F. Feliciano's declaration and Exhibit B to Plaintiff's declaration. On Plaintiff's copy, (1) in addition to the "FEB 23 2017" stamp in the "STAFF USE ONLY" section on the rightmost side of the page, there is a "Received CAL Appeals MAR 07 2017" stamp; and (2) in Box E only the "Cancelled (See attached letter)" box is checked off. (ECF No. 30 at 8–10). On Defendant's copy, (1) there is a red "TREAT AS ORIGINAL" stamp on all pages; (2) there is only the "FEB 23 2017" stamp in the "STAFF USE ONLY" section on the rightmost side of the page; and (3) Box E is completely filled in with both the "Cancelled (See attached letter)" and "Accepted at the Second Level of Review" boxes checked off. (ECF No. 28-4 at 13–15).

On February 23, 2017, Appeal No. WSP-O-17-00752 was cancelled as untimely under title 15, section 3084.6(c)(4) of the California Code of Regulations. (ECF No. 28-4 at 3, 12; ECF No. 30 at 14). The applicable regulation provides that an inmate "must submit an appeal within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b)(1)(2) (2017). The cancellation letter[4] included the following form advisement:

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

(ECF No. 28-4 at 12; No. 30 at 14).

Plaintiff declares that he received the cancellation letter on March 10, 2017. (ECF No. 30 at 2, 14). Plaintiff did not follow the cancellation letter's advisement and did not submit a separate appeal on the cancellation decision. Instead, Plaintiff declares that on or about March 13, 2017, Plaintiff resubmitted Appeal No. WSP-O-17-00752 and the cancellation letter along with an explanation to excuse the untimely filing.[5] (ECF No. 30 at 2, 14). Plaintiff has submitted a copy of a prison mail log, which Plaintiff labeled as outgoing legal, that shows mail addressed to "Wasco State Prison, Inmate Appeals Office" on March 13, 2017. (ECF No. 30 at 30). Plaintiff declares that he did not receive a response from the appeals coordinator regarding his March 13, 2017 submission.

Plaintiff has submitted evidence that he wrote multiple letters addressing the staff complaint and grievance to the Office of Internal Affairs and CDCR headquarters. (ECF No. 30 at 16–23). One of Plaintiff's letters, dated March 24, 2017 and addressed to J. Crojager, specifically mentioned the resubmission of Appeal No. WSP-O-17-00752. (Id. at 22). A response

---

[4] The cancellation letter is also referred to as a CDCR form 695.

[5] Plaintiff's copy of the cancellation letter has a handwritten notation that it was delivered to inmate on March 10, 2017. Additionally, in the space provided for inmates who "are required to respond/explain to this CDCR Form 695," the following explanation is written: "The issue is ONGOING and based on the R.V.R. log #1283236 were the said C/O are violated my Constitutional rights and final copy of the R.V.R. was not givin until Dated 03-7-17 by C/O DePablo, J." (ECF No. 30 at 14).

from a CSP associate warden, dated May 5, 2017, references Plaintiff's March 26, 2017 correspondence in which Plaintiff stated that he was trying to exhaust his remedies. (Id. at 23).

WSP's Appeals Office has no record of Plaintiff submitting a separate appeal on the cancellation decision, and Plaintiff does not dispute that he never separately appealed the cancellation decision. (ECF No 28-4 at 5; ECF No. 31 at 5).

F. Feliciano declares that notwithstanding Appeal No. WSP-O-17-00752's cancellation, WSP's Appeals Office referred the appeal for a confidential inquiry pursuant to CDCR regulations. (ECF No. 28-4 at 4). Title 15, section 3084.9(i) of the California Code of Regulations governs staff complaints and provides that all appeals classified as staff complaints will be referred for an Internal Affairs investigation or receive a confidential inquiry. Cal. Code Regs. tit. 15, § 3084.9(i)(3)(A)–(B).

### B. Analysis

It is undisputed that the CDCR has process in place for administrative grievances, and that an inmate must process his grievance through the third level in order to exhaust administrative remedies. It is also undisputed that Plaintiff submitted Appeal No. WSP-O-17-00752, covering the excessive force and an unreasonable search allegations in the FAC, and the appeal was cancelled as untimely. Yet, Plaintiff did not pursue a separate appeal of the cancellation determination, as required by CDCR regulations. It is undisputed that Plaintiff never exhausted Appeal No. WSP-O-17-00752 or the cancellation of Appeal No. WSP-O-17-00752 through the third level of review.

As Defendant Rodriguez has carried his burden to show that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino II, 747 F.3d at 1172. However, "the ultimate burden of proof remains with the defendant." Id.

///

///

In his Statement of Disputed Facts, Plaintiff offers several reasons why he believes summary judgment should be denied.[6] First, Plaintiff asserts that he was required to substantiate the allegations made in the appeal by attaching supporting documents, including but not limited to disciplinary reports. (ECF No. 32 at 1). However, as noted in F. Feliciano's declaration, the regulations provide:

> The inmate or parolee shall not delay submitting an appeal within time limits established in section 3084.8 if unable to obtain supporting documents, but shall submit the appeal with all available supporting documents and in Part B of their CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, provide an explanation why any remaining supporting documents are not available. Time limits for filing an appeal are not stayed by failure to obtain supporting documentation and commence as set forth in subsection 3084.8(b).

Cal. Code Regs. tit. 15, § 3084.3(b). CDCR regulations have a provision that specifically addresses time limits and the unavailability of supporting documents. Therefore, that Plaintiff delayed submitting his appeal in order to attach a final disposition of the RVR as a supporting document did not render the existing and generally available administrative remedies effectively unavailable to Plaintiff.

Second, Plaintiff asserts that there is a genuine issue regarding whether Plaintiff can resubmit an appeal that was cancelled as untimely with a brief explanation or reason to excuse the cancellation without having to appeal the cancellation itself. (ECF No. 32 at 1). Yet as advised in the cancellation letter, "[o]nce cancelled, an appeal shall not be accepted[7] . . . however, the application of the rules . . . to the cancelled appeal may be separately appealed." Cal. Code Regs. tit. 15, § 3084.6(e). Thus, that Plaintiff improperly resubmitted the cancelled appeal rather than separately appealing the cancellation as provided by the regulations does not

---

[6] At oral argument, Plaintiff raised an additional ground counseling against summary judgment. Plaintiff argued that the exception to the regular appeal process for sexual misconduct appeals might apply in the instant case. The regulations provide that "[t]here shall be no time limit for allegations of staff sexual misconduct." Cal. Code Regs. tit. 15, § 3084.9(a)(5)(A)(1). The Court notes that this argument has been waived because Plaintiff did not raise it in his opposition. Moreover, even if it were not waived, neither the inmate grievance nor the FAC alleged that Defendant's actions constituted sexual misconduct, and there has been no finding that the conduct at issue in this case was sexual in nature.

[7] There is an exception, not applicable here, that "[a]t the discretion of the appeals coordinator or third level Appeals Chief, a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review." Cal. Code Regs. tit. 15, § 3084.6(a)(3).

render the existing and generally available administrative remedies effectively unavailable to Plaintiff.

Third, Plaintiff questions whether he should have been given notice to prepare for a recorded video interview. (ECF No. 32 at 2). It appears that this is in reference to the confidential inquiry of the staff complaint for which Plaintiff refused to be interviewed. (ECF No. 28-4 at 4, 15; ECF No. 30 at 18, 27). However, the confidential inquiry is separate from the administrative grievance process and has no bearing on the PLRA's exhaustion requirement.

Fourth, Plaintiff appears to assert that the CDCR purposefully destroyed Plaintiff's appeals so that Plaintiff could not satisfy the PLRA's exhaustion requirement. In support of this assertion, Plaintiff refers to a document (Exhibit E of Plaintiff's declaration) being "clearly stamped by Appeals Coordinator Date mailed/delivered to appellant 'MAR/27/2017'." (ECF No. 32 at 2). Said document is the copy of Appeal No. WSP-O-17-00752, the Staff Complaint Appeal submitted by Respondent. Box E of the form 602 is entitled "Second Level – Staff Use Only." (ECF No. 28-4 at 15; ECF No. 30 at 27). Within Box E, both the "Cancelled (See attached letter)" and "Accepted at the Second Level of Review" boxes are checked off. Next to the "Cancelled (See attached letter)" line, there is a handwritten notation of "I/M only." (Id.). At the bottom of Box E, the "Date mailed/delivered to appellant" is stamped "MAR/27/2017." (ECF No. 28-4 at 15; ECF No. 30 at 27).

Plaintiff's argument appears to be that when Plaintiff resubmitted Appeal No. WSP-O-17-00752 with an explanation to excuse his untimely filing on March 13, 2017, the resubmitted appeal was accepted at the second level of review in light of (1) the "Accepted at the Second Level of Review" box being checked off, and (2) the appeal still being in the Appeals Office's possession on the stamp date of March 27, 2017 despite the letter cancelling the original appeal having been issued on February 23, 2017. (ECF No. 30 at 3). Plaintiff declares that he did not receive a response from the appeals coordinator regarding his March 13, 2017 resubmission, which prevented him from appealing to the third level of review. (ECF No. 30 at 2).

The Court notes, however, that in Box E the line under "Accepted at the Second Level of Review" states "Assigned to: AW RC (CDW)" and "Date Assigned: 2/27/17." (ECF No. 28-4 at

15; ECF No. 30 at 27). In light of the February 27, 2017 assignment date, the "Accepted at the Second Level of Review" box would not have been checked off based on Plaintiff's March 13, 2017 resubmission. Rather, the February 27, 2017 assignment date is consistent with the staff complaint receiving a confidential inquiry separate from the inmate grievance being cancelled as untimely. This conclusion is further supported by the interview information contained in Box E, which states that Sergeant R. Harmon attempted to interview Plaintiff on February 23, 2017, but that Plaintiff refused to be interviewed. (ECF No. 28-4 at 15). F. Feliciano declares that Sergeant R. Harmon's attempted February 23, 2017 interview was part of the confidential inquiry process.[8] (ECF No. 28-4 at 4).

Based on the foregoing, the lack of response to an improperly resubmitted cancelled appeal did not render the existing and generally available administrative remedies effectively unavailable to Plaintiff.

Additionally, in his declaration Plaintiff appears to assert that ongoing lockdowns, modification of programs, and limited access to the law library caused his untimely grievance. (ECF No. 30 at 2). In support of this assertion, Plaintiff attached a copy of a Daily Program Status Report, effective for the date of February 1, 2017, regarding modified programs and a memorandum, dated January 31, 2017, regarding access to the exercise yard. (ECF No. 30 at 35–36). As noted by Defendant Rodriguez in the reply, Plaintiff "fails to explain how these programing interruptions would prevent him from completing a one page CDCR Form 602, which minimally requires: the inmate's name, CDC number, cell number, work assignment, a brief statement of the issue, a statement of the action requested, the date, and a signature." (ECF No. 33 at 4). Plaintiff does not attest that these lockdowns, programming modifications, and limited law library access persisted for the entire thirty-day period in which he had to file his appeal. Further, the evidence provided by Plaintiff is from January 31, 2017 and February 1, 2017, approximately two months after the thirty-day appeal window expired.

"[T]he PLRA exhaustion requirement requires proper exhaustion," which "demands

---

[8] The Court notes that there is an inconsistency between the form 602 and F. Feliciano's declaration regarding the location of the interview. However, the Court finds that the inconsistency is immaterial for present purposes.

12

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 93, 90–91 (2006). It is undisputed that the CDCR has a policy in place for administrative grievances. It is also undisputed that Plaintiff did not take a grievance covering the allegations in the First Amended Complaint through all three stages of the CDCR's administrative process. As discussed above, the Court finds that Plaintiff failed to meet his burden of showing that the generally available administrative remedies were unavailable to him. Therefore, the undersigned will recommend that this case be dismissed for failure to exhaust Plaintiff's administrative remedies.

## V. RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Defendant Rodriguez's motion for summary judgment (ECF No. 28) be GRANTED; and
2. This action be DISMISSED because Plaintiff failed to exhaust his available administrative remedies before filing this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 20, 2019**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

13